# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION AT LAFAYETTE

FABIAN HUIZAR,                         )
                                       )
      Plaintiff,                    )
                                       )
      v.                            )      Case No. 4:22-CV-60-PPS
                                       )
HORIZON BANK,                          )
                                       )
      Defendant.                    )

## OPINION AND ORDER

Fabian Huizar purchased an SUV using a loan obtained from Horizon Bank. Huizar eventually fell behind on his car payments, so Horizon repossessed his SUV. But a state court judge found Horizon botched the repossession, which resulted in Huizar obtaining a judgment absolving him of any responsibility to pay his delinquent car bill. Put plainly, once the state court litigation wrapped up, Huizar owed Horizon precisely nothing. The problem was the Horizon debt kept appearing on his credit reports with the "big three" consumer reporting agencies—Experian, Equifax, and TransUnion. So Huizar repeatedly disputed the debts by sending numerous dispute letters to those three companies. Experian, Equifax, and TransUnion would, in turn, contact Horizon to confirm whether the debt was still active. Remarkably, Horizon kept informing the credit reporting agencies that Huizar's debt was still active.

Eventually, Huizar turned to the courts. He filed this lawsuit against Horizon under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, seeking to recover damages for what he believes is inaccurate reporting of the Horizon debt. After

the close of discovery, Huizar and Horizon filed cross motions for summary judgment.
[DE 131; DE 133.] I find Huizar has proved one aspect of Horizon's reporting of his
Horizon account was inaccurate as a matter of law, but genuine issues of material fact
remain as to Huizar's other theory of inaccuracy, the reasonableness of Horizon's
investigation, and Huizar's damages. Huizar's motion for summary judgment is
therefore granted in part and denied in part, and Horizon's motion for summary
judgment is denied in full.

**Factual Background**

*Huizar's Car Loan and the Tippecanoe Circuit Court Proceedings*

On January 12, 2018, Fabian Huizar used a loan serviced by Horizon Bank to
purchase a 2015 Ford Explorer. [DE 136-1 at ¶1.] By July 2018, Huizar had missed
several monthly payments towards the Horizon loan. [*Id.* at ¶2.] Because of these
missed payments, Horizon employed a repo company to repossess Huizar's car on July
24, 2018. [*Id.* at ¶3.] After the repossession, Huizar called Horizon to negotiate the
missed payments and retrieve his car. [DE 140 at ¶2.] Instead, Horizon told Huizar it
had accelerated his loan, which required him to repay the loan in full before Horizon
would return the car. [*Id.*] A couple months later, Horizon sold Huizar's car at a private
auction for $16,000, which Horizon claimed left a deficiency balance of $7,679.08 on
Huizar's loan. [*Id.* at ¶4.]

Huizar sued Horizon on November 22, 2018, in Tippecanoe Circuit Court in
Indiana concerning the circumstances of Horizon's repossession of Huizar's car. [*Id.* at
¶5.] Huizar prevailed at a bench trial, and in a July 7, 2020, order, the Circuit Court held

2

Huizar had "defaulted on the loan and Horizon was entitled to accelerate the loan" but that Horizon's repossession breached the peace. [*Id.* at ¶6; DE 131-4 at 3–4.] As a result, the Circuit Court ruled in Huizar's favor on his consumer protection claims and awarded damages. [*Id.* at 5–11.] Importantly, as another form of relief, the Circuit Court specifically "eliminate[d] [Horizon's] deficiency judgment" and therefore reduced Huizar's awarded damages by the $7,679.08 deficiency judgment amount. [*Id.* at 9–10.] The judge also denied Horizon's counterclaim for breach of contract and deficiency judgment. [*Id.* at 10.]

The Circuit Court later entered a Final Appealable Order on September 21, 2020, that modified the July 7, 2020, Order to dismiss one of Huizar's claims and reduce his total awarded damages. [DE 135-1 at 22–33.] But the Final Appealable Order did not amend (and in fact it restated) the conclusions of law in the July 7, 2020, Order that eliminated Horizon's deficiency judgment and reduced Huizar's damages by that sum. [*Id.* at 28.] Horizon appealed, and on October 13, 2021, the Indiana Court of Appeals affirmed all but a portion of the Circuit Court's Final Appealable Order concerning attorney's fees awarded to Huizar. [*Id.* at 59–61; *see also Bank v. Huizar*, 178 N.E.3d 326 (Ind. Ct. App. 2021).]

Huizar sent the three major credit reporting agencies, Equifax, Experian, and TransUnion (the "CRAs"), numerous letters that disputed the information on his credit reports. To process consumer disputes like Huizar's, Horizon communicates with the CRAs using an Automated Credit Dispute Verification ("ACDV") form. [DE 140 at ¶8.] The ACDV forms sent from the CRAs to Horizon included "request fields" that

3

reflected the CRAs' existing, contested data in its credit file for Huizar. [*Id.* at ¶12.]

Horizon would then complete the "response field" on the ACDV form to either confirm

the accuracy of the CRAs' existing information or provide updated information. [*Id.*]

The briefing in this case focuses on seven such disputes:

*July 2020 Disputes ("First Dispute")*

On July 8, 2020, Huizar mailed dispute letters to TransUnion, Equifax, and

Experian that disputed the Horizon loan information reported on his credit report. [DE

131-5; DE 131-6; DE 131-7.] Huizar wrote his report showed a balance of $7,594 owed to

Horizon but he did "not owe anything to Horizon." [DE 131-5 at 1.] He also wrote he

"disputed this account, but my credit report doesn't show that." [*Id.*] Huizar's mailing

included the July 7, 2020, Order of the Indiana state court. [*Id.* at 8–18.] The CRAs each

sent ACDV forms concerning Huizar's dispute and the July 7, 2020, Order to Horizon.

[DE 140 at ¶¶9, 11.] Horizon returned the ACDV forms to the CRAs on August 6, 2020.

[*Id.* at ¶13.] In each ACDV response, Horizon indicated Huizar's disputed information

was accurate and noted a current balance of $7,641 for the Horizon account. [DE 131-14;

DE 131-15; DE 131-17.] Horizon also noted Huizar's account was charged off. [*Id.*]

*November 2020 Disputes ("Second Dispute")*

On November 24, 2020, Huizar mailed the CRAs a second dispute letter in which

he said his credit reports showed he now owed $7,829 to Horizon. [DE 131-22; DE 131-

23; DE 131-24.] Huizar reiterated his claim he doesn't "owe anything to Horizon" and

noted his balance "somehow went up since last time." [DE 131-22 at 1.] Huizar wrote:

"If you look at court records, you'll see I don't owe this." [*Id.*] Horizon's December 10,

2020, ACDV responses to the CRAs increased the amount past due and current balance figures for Huizar's Horizon account from $7,829 to $7,875. [DE 131-27; DE 131-28; DE 131-29.] Horizon also updated the original charge off amount from $22,558 to $22,942. [*Id.*]

### January 2021 Disputes ("Third Dispute")

On January 16, 2021, Huizar mailed the CRAs a third dispute letter in which he said his credit report showed he owed $7,875 to Horizon. [DE 131-37; DE 131-38; DE 131-39.] Huizar noted his Horizon account was listed as closed but had no listed closure date [*Id.*] Huizar's mailings to the CRAs included, among other things, four pages of the September 21, 2020, Order. [DE 131-37 at 127–30.] Horizon's February 2021, ACDV responses to the CRAs differed. In its ACDV responses to TransUnion and Experian, Horizon listed Huizar's current balance and amount past due as $7,920. [DE 131-41; DE 131-46.] In its ACDV response to Equifax, Horizon listed Huizar's current balance and amount past due as $7,875. [DE 131-40.]

### November 2021 Disputes ("Fourth Dispute")

On November 15, 2021, Huizar mailed the CRAs a fourth dispute letter in which he said his credit report showed he owed $8,388 to Horizon. [DE 131-55; DE 131-56; DE 131-57.] Huizar said he checked his credit report again because he received an email about a late payment on a Horizon account. [DE 131-55 at 1.] Huizar cited the Indiana Court of Appeals proceedings and attached, among other things, the October 13, 2021, Indiana Court of Appeals opinion. [*Id.* at 15–73.] Horizon's ACDV responses to Equifax and TransUnion adjusted to $0 the current balance and balance past due figures which

had been $8,388. [DE 131-60 at 1; DE 131-62.] The ACDV responses continued to list the amount charged off as over $22,000. [*Id.*] Neither Horizon nor Huizar presented evidence of an ACDV response to Experian.

### *December 2021 Disputes ("Fifth Dispute")*

On December 18, 2021, Huizar mailed the CRAs his fifth dispute letter, in which he took issue with the Horizon account reported as "charge-off." [DE 131-70; DE 131-71; DE 131-72.] Huizar noted that his credit score increased more than 50 points after the CRAs removed the balance owed and amount past due figures from his credit reports. [*Id.*] In its December 31, 2021, and January 5, 2022, ACDV responses to TransUnion and Experian, respectively, Horizon listed Huizar's current balance and amount past due as $0. [DE 131-74; DE 131-75.] The ACDV responses also listed an original charge off amount of over $22,000. [*Id.*] Neither Horizon nor Huizar presented evidence of an ACDV response to Equifax.

### *April 2022 Disputes ("Sixth Dispute")*

On April 11, 2022, Huizar mailed Experian and Equifax his sixth dispute letter, in which he said Experian and Equifax had relisted the Horizon account on his credit report with $8,572 as past due. [DE 131-81; DE 131-82.] Horizon's April 27, 2022, ACDV response to Equifax adjusted the current balance and balance past due figures to $0. [DE 131-84.] Neither Horizon nor Huizar presented evidence of an ACDV response to Experian.

### *July 2022 Disputes ("Seventh Dispute")*

On July 11, 2022, Huizar mailed Equifax and Experian his seventh dispute letter, in which he said Equifax and Experian had relisted the Horizon account on his credit report with $8,756 and $8,713 past due and $22,558 and $22,942 as charged off, respectively. [DE 131-90; DE 131-91.] Horizon's August 4, 2022, ACDV responses to Equifax and Experian adjusted Huizar's current balance and balance past due figures to $0. [DE 131-92; DE 131-93.] On August 4, 2022, Horizon submitted an Automated Universal Data form ("AUD") to Equifax, Experian, and TransUnion to update Huizar's Horizon account to reflect a $0 balance and $0 amount past due. [DE 131-94.] According to the Parties, data furnishers use AUDs to affirmatively provide updated credit information to CRAs. [DE 140 at ¶57.]

## Standard of Review

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (citation omitted). On a motion for summary judgment, all facts and reasonable inferences are construed in a light most favorable to the non-moving party. *Waukegan Potawatomi Casino, LLC v. City of Waukegan*, 128 F.4th 871, 873 (7th Cir. 2025).

## Discussion

Congress enacted the Fair Credit Reporting Act ("FCRA"), codified at 15 U.S.C. § 1681 *et seq.*, "to ensure fair and accurate credit reporting, promote efficiency in the

banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Furnishers of consumer credit information play a central role within the statutory scheme established by the FCRA. "Though the FCRA does not define the term 'furnisher', FCRA regulations define a furnisher as 'an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report.'" *Denan v. Trans Union LLC*, 959 F.3d 290, 294 n.2 (7th Cir. 2020) (citing 12 C.F.R. § 1022.41(c)). There is no dispute that Horizon is a furnisher for purposes of Huizar's FCRA claim.

Huizar alleges Horizon violated 15 U.S.C. § 1681s-2(b). This provision of the FCRA requires furnishers to "investigate and review disputed information forwarded by a credit reporting agency for completeness and accuracy, and then send verified or amended data back to the agency." *Frazier v. Dovenmuehle Mortg., Inc.*, 72 F.4th 769, 775 (7th Cir. 2023). If during a reinvestigation a furnisher determines an item of information disputed by a consumer "is found to be inaccurate or incomplete or cannot be verified", the furnisher has three options: (1) modify the information; (2) delete the information; or (3) permanently block the reporting of the information. 15 U.S.C. § 1681s-2(b)(1)(E).

In *Frazier*, the Seventh Circuit articulated two threshold requirements to assert a claim under § 1681s-2(b):

> 1. The plaintiff must make a prima facie showing that the data furnisher provided incomplete or inaccurate information.

> 2. The plaintiff must also show that the incompleteness or inaccuracy was the product of an unreasonable investigation—that is, had the furnisher conducted a reasonable investigation, it would have discovered that the data it provided was incomplete or inaccurate.

72 F.4th at 775. Concerning the latter requirement, "incompleteness or inaccuracy under § 1681s-2(b) requires a showing that the information the data furnisher provided was (1) patently incorrect, or (2) materially misleading, including by omission." *Id.* at 776. Materially misleading means "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id.* (citation omitted). Also of note, in *Frazier* the Seventh Circuit explicitly rejected the argument that § 1681s-2(b) requires evaluation of the completeness or accuracy of the *credit report* generated from a furnisher's response. *Id.* at 776. Rather, "completeness or accuracy is evaluated objectively based on the content of the furnisher's *ACDV response*" to a CRA. *Id.* at 777 (emphasis added).

Given Huizar must first make a "threshold showing" that Horizon's data was incomplete or inaccurate, *id.* at 772, I begin by evaluating the Parties' arguments and evidence concerning the accuracy and completeness of Horizon's reporting.

## I.    Accuracy of Horizon's Reporting

Huizar alleges Horizon's reporting contained two categories of inaccuracies. In the first category, Huizar argues Horizon reported inaccurate balance and amount past due figures for his Horizon account. Second, Huizar argues Horizon's reporting of the Horizon account as "charged off" and with a listed charge off amount was inaccurate or at least misleading. Horizon's response is twofold. Horizon argues that the substance of its reporting was accurate and complete. Moreover, Horizon argues that its reporting was accurate and complete because the July 7, 2020, Order was under appeal during

much of the reporting at issue, which Horizon argues created unresolved questions of law. Specifically, Horizon argues that the data it furnished prior to November 2021 did not violate the FCRA because Huizar's July 7, 2020, Order was on appeal. Recall that the Indiana Court of Appeals affirmed the relevant portions of the July 7, 2020, Order on October 13, 2021. In November 2021, after the October 2021 ruling, Horizon notes that it began to report Huizar's current balance and amount past due to $0.

I begin with Horizon's argument concerning the effect of its appeal of the July 7, 2020, Order. Horizon argues the appellate process, including the Indiana Court of Appeals' remand, meant the question of the validity of Huizar's deficiency balance was unresolved until December 2021 or, at the latest, August 25, 2022 (when the trial court's second amended judgment on remand became final and non-appealable). In support of its argument, Horizon relies primarily on *Rokita v. Tully*, 235 N.E.3d. 189 (Ind. Ct. App. 2024) for the proposition that until the time for an appeal expires, trial court decisions are not the final word of the Indiana judiciary. But as Huizar points out, *Rokita* dealt with the concept of the finality of trial court decisions in a unique separation of powers context inapplicable here. In *Rokita*, the Indiana Court of Appeals considered whether the Indiana General Assembly's passage of a retroactive law that altered the outcome of the plaintiff's case on appeal violated the Indiana Constitution's provision concerning separation of powers. *Id.* at 198–200. The court explained that the legislature cannot pass a retroactive law that sets aside the "final judgment" of a court, but it could pass a retroactive law to set aside an order under appeal or subject to appeal. *Id.* at 199.

*Rokita* did not abrogate the longstanding principle, as articulated by the Indiana

Supreme Court, that "the only effect of an appeal to a Court of Error, when perfected, is to stay execution upon the judgment from which it is taken. In all other respects, the judgment, until annulled or reversed, stands binding upon the parties, as to every question directly decided." *Nill v. Comparet*, 16 Ind. 107, 109 (1861); *City of Indianapolis v. Producers Realty, Inc.*, 166 N.E.2d 648, 510–11 (Ind. 1960). Indeed, the Indiana Court of Appeals in *Rokita* noted its interpretation of "final judgment" was specific "to th[e] context" of retroactive application of new laws to court orders. 235 N.E.3d at 199. Horizon's effort to distinguish the facts of *Producers Realty, Inc.*, and other cases cited by Huizar is unpersuasive. Indiana courts have long applied this broadly applicable principle to a variety of circumstances. Under Horizon's view, trial court orders are essentially meaningless until the full appellate process has played out. That's not sensible and it's just not the case.

Having established Horizon could not ignore the July 7, 2020, Order until its appeal of the same had concluded, I turn now to the Parties' arguments concerning whether Horizon's reporting was substantively inaccurate, incomplete, or misleading. Huizar says Horizon's ACDV responses to his July 2020, November 2020, and January 2021 disputes inaccurately reflected a balance amount and amount past due on his Horizon account. Horizon's ACDV responses reported current balances due of $7,641 in response to his July 2020 dispute, $7,875 in response to his November 2020 dispute, and $7,920 or $7,875 in response to his January 2021 dispute. [DE 131-14; DE 131-15; DE 131-17; DE 131-27; DE 131-28; DE 131-29; DE 131-40; DE 131-41; DE 131-46.] Huizar argues the July 7, 2020, Order, which Horizon had received, conclusively terminated any

current balance or amount past due on his loan. Thus, according to Huizar, these ACDV responses from Horizon were plainly inaccurate.

Horizon argues it did not furnish inaccurate or materially misleading information in its ACDV responses to the July 2020, November 2020, and January 2021 disputes because it was not required, and is improper for it to be expected, to resolve a question of law concerning the treatment of the deficiency judgment. Horizon's argument here overlaps much with its argument I discussed (and rejected) above concerning the impact of its appeal of the July 7, 2020, Order. But as I understand it, Horizon also seems to argue that *interpreting* the July 7, 2020, Order presented a question of law.

Horizon cites *Denan* in support of its argument that the validity of a debt is a question of law that only courts can resolve. This statement is overly broad for two reasons. First, in *Denan* consumers who borrowed from Indian tribes at interest rates prohibited by state usury laws contended that their credit reports were inaccurate because they reported the debts even though the debts were (in their view) uncollectible since they violated state law. 959 F.3d at 292–93. But unlike Huizar's case, no court answered the question as to whether the loans were invalid. In fact, the Seventh Circuit in *Denan* noted: "[i]f a court had ruled the loans invalid and Trans Union had continued to report it as a valid debt, then plaintiffs would have grounds for a potential FCRA claim." *Id.* at 296 (citation omitted, cleaned up). That describes exactly what happened to Huizar; essentially, the state court in this case ruled that Horizon's loans were no longer valid.

Second, and more importantly, the Seventh Circuit has suggested furnishers are subject to a heightened standard of accuracy as compared to CRAs, one which may even include a duty to resolve certain legal questions. In *Denan* the Seventh Circuit explained that "'[a]ccuracy' for furnishers, however, means information that 'correctly [r]eflects . . . liability for the account.' 12 C.F.R. § 1022.41(a). Neither the FCRA nor its implementing regulations impose a comparable duty upon consumer reporting agencies, much less a duty to determine the legality of a disputed debt." *Id.* at 295. Some district courts have interpreted *Denan*'s explicit differentiation between CRAs' and furnishers' duties of accuracy to mean "[u]nlike consumer reporting agencies, furnishers must resolve legal questions regarding liability when necessary to resolve disputed information." *Thompson v. Transunion Data Sols., LLC*, No. 20-cv-04207, 2021 WL 1923409, at *2 (N.D. Ill. May 13, 2021).

The Seventh Circuit in *Frazier* left the question of furnishers' duties to resolve legal questions under the FCRA unresolved. That said, even assuming the Seventh Circuit applied the same standard for evaluating legal questions to furnishers that it uses for CRAs, Horizon's arguments still fail. The Seventh Circuit has described the difference between a factual and a legal dispute as follows. "The paradigmatic example of a legal dispute is when a consumer argues that although his debt exists and is reported in the right amount, it is invalid due to a violation of law." *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir, 2021). "In contrast, examples of factual inaccuracies include the amount a consumer owes, and what day a consumer opened an account or incurred a payment." *Id.* at 568.

At first glance, Huizar's argument that Horizon's listing of a balance amount and balance past due on its July 2020, November 2020, and January 2021 ACDV responses was inaccurate because of the state court orders seems a "paradigmatic" example of a legal dispute because he asks Horizon to determine that his debt was invalid as a matter of law. But *Chuluunbat* recognized a key carve out: "[a] legal question may also be resolved as a matter of fact if a tribunal—such as a court or arbitrator—has adjudicated the matter." *Id.* Let's suppose Huizar had never taken Horizon to court, and he filed a dispute letter that required Horizon to investigate his complaint that he didn't owe Horizon any money because Horizon had breached the peace during the repossession. Under the standard for CRAs, that would be an unresolved *legal* question that Horizon would have no duty to report on. By contrast, once a legal dispute is resolved—as in this case—with a finding the debt is no longer valid, that becomes a factual matter that CRAs and furnishers must report accurately.

Horizon suggests the state court orders never resolved whether Huizar owed money to Horizon or ordered Horizon to zero-out the balance of Huizar's account. This argument ignores the state court orders' explicit holding that "eliminate[d] the deficiency judgment." [DE 131-4 at 10.] In any event, CRAs and certainly furnishers cannot simply throw their hands up when they receive a court order. *See Chaitoff* v. *Experian Info. Sols., Inc.*, 79 F.4th 800, 815 (7th Cir. 2023) (noting "CRAs can read and understand legal documents"). In fact, Huizar did exactly what the Seventh Circuit advised in *Chuluunbat*: "If the plaintiffs presented court judgments to the consumer reporting agencies showing that the legal ownership of their debts have been

adjudicated, the investigation may have been factual in nature." 4 F.4th at 569. That
same reasoning applies here.

Nothing in *Herrell v. Chase Bank USA, N.A.*, 218 F.Supp.3d 788 (E.D. Wis. 2016), a
case relied on by Horizon, mandates a different result. For starters, *Herrell* predates
*Chuluunbat*, *Chaitoff*, and *Frazier* and commented how at that time "[t]he Seventh Circuit
has yet to establish its own interpretation of the FCRA's standards for accuracy and
completeness." *Id.* at 793. But most importantly, the plaintiff in *Herrell* did not have a
state court order stating that Chase could not collect on his debt. Instead, the plaintiff
crafted a Wisconsin statute of limitations argument, but the court determined that both
the choice of state law and the plaintiff's interpretation of Wisconsin law were unsettled
legal (as opposed to factual) questions. *Id.*

Although Huizar previously owed money to Horizon, beginning on July 7, 2020,
the state court orders "eliminate[d]" his obligation to make future payments towards
that debt. In other words, *Huizar no longer owed money to Horizon* after that date. Horizon
received this court order and was not required to resolve any outstanding legal
questions to understand its plain meaning. Yet, in its July 2020, November 2020, and
January 2021 ACDV responses to the CRAs it continued to report a balance *currently*
due on Huizar's Horizon account. Horizon's primary defense of its reporting of the
current balance and amount past due figures on these three ACDV responses is that the
July 7, 2020, Order was under appeal, but this argument is without merit. As a result,
the Court finds Huizar has established that Horizon's reporting of a current balance and
amount past due in its July 2020, November 2020, and January 2021 ACDV responses

15

was inaccurate as a matter of law.

In addition, Huizar argues that Horizon's ACDV responses that listed his Horizon account as "charged off" were inaccurate and misleading. Horizon's reporting of Huizar's account as "charged off" and with a charge off amount presents a different question of accuracy than its reporting of Huizar's balance amount and balance past due because charge off reporting does not necessarily reflect a *current* debt. Instead, "charge off" refers to "a creditor's decision '[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." *Borowski v. Ally Fin. Inc.*, Case No. 22-cv-0394-bhl, 2023 WL 4207784, at *3 (E.D. Wis. June 27, 2023) (citing Black's Law Dictionary (11th ed. 2019)). After all, "a credit report is intended to include more than a person's current debt; it also includes bill-payment history and other information that a reasonable lender might consider important in deciding whether and at what rate to extend credit." *Herrell*, 218 F.Supp.3d at 792. Indeed, Huizar does not dispute that he missed *previous* payments. [DE 136-1 at ¶2.]

Huizar argues Equifax's reporting of his Horizon loan as charged off and the amount of the charge off were both inaccurate. These theories of inaccuracy present different factual questions. On the one hand, I find that Horizon has satisfied its burden on summary judgment to establish that its mere fact of reporting the Horizon account as charged off (setting aside the amount and when) is not inaccurate under the FCRA. It is undisputed that Horizon did in fact charge off Huizar's loan. Huizar concedes he did not repay in full Horizon's loan. Moreover, Horizon's sale of his car at an auction did not recover the full amount of the loan to Huizar. As the Seventh Circuit recognized in

*Frazier*, it is not materially misleading to furnish information that reflects accounts that were historically, rather than currently, past due. 72 F.4th at 778. And unlike the state court orders that "eliminate[d]" his deficiency owed to Horizon, Huizar points to no language (nor could he) in the state court orders that held as a matter of law Horizon could not report the account as charged off.

On the other hand, there is a triable question of fact on the accuracy of Horizon's reporting of the amount charged off Huizar's account. Huizar argues that Horizon's reporting over $20,000 as charged off did not account for the fact that Horizon had been paid (at least partially) through the sale of his car that Horizon repossessed. He also argues that Horizon did not include as context the state court orders when it furnished his charge off amount information. Neither party has met their burden for summary judgment on these details concerning Horizon's charge off reporting in its ACDV responses, so they remain as questions of fact for trial.

## II.    Reasonableness of Horizon's Investigation

Given Huizar has established a triable issue on the accuracy of Horizon's furnishing of his credit information, I now turn to the second requirement of his § 1681s-2(b) claim: Huizar "must also show that the incompleteness or inaccuracy was the product of an unreasonable investigation—that is, had the furnisher conducted a reasonable investigation, it would have discovered that the data it provided was incomplete or inaccurate." *Id.* at 775. Of note, "the reasonableness of a furnisher's investigation 'is a factual question normally reserved for trial' unless the defendant's procedures were reasonable 'beyond question.'" *Woods v. LVNV Funding, LLC*, 27 F.4th

17

544, 550 (7th Cir. 2022) (quoting *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)).

"What counts as a reasonable investigation depends on the content of the ACDV the furnisher receives." *Woods*, 27 F.4th at 550; *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009) ("The pertinent question is . . . whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute."). Horizon's motion for summary judgment hinged on establishing its reporting of information was accurate as a matter of law. Horizon did not move for summary judgment on grounds that its investigation was reasonable as a matter of law. Thus, the Court evaluates only Huizar's motion for summary judgment in this regard.

Huizar's argument concerning the reasonableness of Horizon's investigation focuses on two pieces of evidence. First, he points to Horizon's receipt of the July 7, 2020, Order. Second, he relies on the deposition testimony of Horizon's collections supervisor and Rule 30(b)(6) representative Cindy Pickens.

Huizar has not presented sufficient evidence to succeed on summary judgment in establishing as a matter of law that Horizon's investigation process was unreasonable. Huizar does not explain in detail the context in which Pickens reviewed the July 7, 2020, Order or her responsibilities and involvement in Horizon's investigation of Huizar's dispute. Based on the Court's own review of Pickens' testimony and Huizar's statement of facts, Pickens seems to have been responsible for supervising "collectors" who respond to consumer disputes. [DE 131-103 at 8–10.]

Pickens indeed testified that upon review of the July 7, 2020, Order, Horizon should have adjusted Huizar's current balance and amount past due to $0. [*Id.* at 78–79.] But left unexplained by Huizar is how this post-hoc conclusion demonstrates Horizon's investigation of his disputes was unreasonable as a matter of law. Huizar's briefing also fails to explain the roles of Ms. Watson and Ms. Anderson, who also appear to have been involved in reviewing Huizar's disputes. [DE 132-1 at ¶¶71–73.] Pickens' testimony may be of great value to Huizar at trial, but these open questions (among others) demonstrate Huizar has not met his burden on summary judgment. It is not this Court's responsibility to search for and opine on Huizar's unpresented and unexplained evidence. *See, e.g.*, *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

## III.    Willfulness, Negligence, and Damages

As I have done here, the Seventh Circuit, following the Supreme Court's lead in *Safeco*, permits courts to first answer the "antecedent question of whether a violation [of the FCRA] occurred" before analyzing a defendant's mental state. *See Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1195 (7th Cir. 2021). However, as with the reasonableness of its procedures, Horizon has not moved for summary judgment on the questions of Huizar's allegations that Horizon negligently or willfully violated the FCRA. I need not reach these questions because Horizon has not moved for summary judgment on these issues and Huizar has raised triable issues on the "antecedent question[s]" of whether a violation of the FCRA occurred.

* * *

The record before me illustrates that there are genuine issues of material fact that should be presented to a jury at trial. Factual questions which remain are: (1) Whether Horizon's reporting in its ACDV responses of over $20,000 charged off Huizar's Horizon account without mention of the state court orders was inaccurate or materially misleading; (2) Whether Horizon failed to conduct a reasonable investigation of Huizar's disputes, and (3) Issues of mental state and damages.

### Conclusion

Accordingly, Plaintiff Fabian Huizar's Motion for Partial Summary Judgment [DE 131] is **GRANTED IN PART AND DENIED IN PART**. Defendant Horizon Bank's Motion for Summary Judgment [DE 133] is **DENIED**.

**SO ORDERED**.

ENTERED: December 17, 2025.

/s/ Philip P. Simon
UNITED STATES DISTRICT JUDGE